THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER P. SOVA and KRISTI SOVA, <br><br> Plaintiffs, <br><br> v. <br><br> RONALD H. SNYDER, BENEFITS FOR CORPORATE AMERICA, INC., BENEFIT STRATEGIES GROUP, LLC, and BENEFITS FOR CORPORATE AMERICA, INC. DEFERRED COMPENSATION PLAN, <br><br> Defendants. | **ORDER GRANTING [31] PLAINTIFFS' SECOND MOTION FOR DEFAULT JUDGMENT** <br><br> Case No. 2:22-cv-00247-DBB-DBP <br><br> District Judge David Barlow |

Before the court is Plaintiffs Christopher P. Sova ("Mr. C. Sova") and Kristi Sova's ("Ms. Sova") (collectively "Plaintiffs") Second Motion for Default Judgment.[1] Because proceedings are stayed against Defendant Ronald H. Snyder ("Mr. Snyder") for his bankruptcy action,[2] the court rules on the motion for default judgment against the following entities only: Benefits for Corporate America, Inc. ("BCA"), Benefit Strategies Group, LLC ("Benefit Strategies"), and Benefits for Corporate America, Inc. Deferred Compensation Plan (the "Plan") (collectively "Defendants"). Having reviewed the filings and relevant law, the court grants Plaintiffs' second motion for default judgment.

---

[1] Second Mot. Default, ECF No. 31, filed Sept. 14, 2022.
[2] *See* ECF No. 28, filed Aug. 11, 2022; 11 U.S.C. § 326(a).

## UNCHALLENGED FACTS[3]

Mr. C. Sova and Jeremy Sova ("Mr. J. Sova") worked for Battery Solutions, Inc. ("BSI").[4] In August 2006, Mr. C. Sova and Mr. J. Sova signed an agreement that deferred their work bonuses into a trust ("Trust") that was part of BSI's retirement plan.[5] BCA was the Plan's Sponsor[6] and worked with BSI to execute the Trust.[7] Benefit Strategies was the Plan Administrator who "manage[d] and control[led] the operation and administration of the Plan."[8] Together, BCA and Benefit Strategies "exercised discretionary authority, control, and responsibility over the management and administration of the Plan, Trust and Trust assets."[9] The Plan fell under the Employee Retirement Income Security Act of 1974 ("ERISA").[10]

Mr. C. Sova and Mr. J. Sova allocated their contributions to a fixed income fund.[11] The Plan required that earnings and accumulated interest remain "at all times fully vested and nonforfeitable."[12] When there was a "change in control event,"[13] participants were entitled to

---

[3] A failure to deny a well-pleaded allegation, other than an allegation of damages, constitutes an admission of the fact. Fed. R. Civ. P. 8(b)(6). As a result, considering a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint. *See, e.g.*, *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("[D]efendant by his default, admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established." (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002))).

[4] Compl. ¶ 19, ECF No. 2, filed Apr. 7, 2022. Though Mr. J. Sova was a Plan participant, Ms. Sova succeeded to Mr. J. Sova's benefits after a divorce. *Id.* ¶ 24.

[5] *Id.* ¶¶ 17–19, 21, 26.

[6] *Id.* ¶ 9.

[7] BCA Deferred Compensation Plan eff. Jan. 1, 2005 §§ 2.1, 2.12, 2.24, 7.2, ECF No. 2-2, filed Apr. 7, 2022.

[8] *Id.* § 2.1.

[9] Pls. Brief in Support of Mot. for Default Judgment, ECF No. 26-1, filed June 30, 2022.

[10] Compl. ¶ 6; *see* 29 U.S.C. § 1002(2)–(3).

[11] Compl. ¶¶ 22–23.

[12] *Id.* ¶ 29 (quoting ECF No. 2-2, § 4.2).

[13] A "'change in control event' means a 'change in the ownership,' a 'change in the effective control' or a 'change in the ownership of a substantial portion of the assets' of a Participating Employer." BCA Deferred Compensation Plan eff. Jan. 1, 2013, at § 2.6, ECF No. 2-3, filed Apr. 7, 2022.

distributions.[14] Distributions were to be fixed payments over ten years regardless "of the actual investments or actual performance of the Trust."[15]

In 2012, BSI underwent a change in control event and Plaintiffs started receiving payments in 2013.[16] Defendants temporarily stopped payments in late 2019, claiming a lack of funds, and they stopped payments altogether in September 2021.[17] They offered various reasons for the nonpayments. In October 2019, they stated that they had converted 20% of Plan assets to several illiquid, "noncorrelated investments."[18] They also shared that they had lost $2.3 million of Plan assets after loaning money to several companies.[19] In an April 2020 memo, Defendants noted that investments in indexed life insurance policies and annuities "did not turn out as well as [they] should have."[20] They notified participants in September 2021 that they had suspended distributions.[21] While Defendants promised an accounting, they have yet to provide one.[22] In January 2022, Defendants told participants that funds were substantially depleted.[23] They declared their intention to "shut down the trust and distribute all benefits to participants" while also stating that assets "[we]re insufficient to pay all expected benefits."[24]

Plaintiffs filed their Complaint on April 7, 2022 for ERISA and state-law claims.[25] Defendants were properly served.[26] With no response or appearances, the Clerk of Court filed a

---

[14] Compl. ¶ 31.
[15] Id. ¶ 33.
[16] Id. ¶¶ 50–51.
[17] Id. ¶ 52.
[18] Id. ¶ 55.
[19] Id. ¶ 58.
[20] Id. ¶ 60.
[21] Id. ¶¶ 63–64.
[22] Id. ¶¶ 65–66.
[23] Id. ¶¶ 67–68.
[24] Id. ¶ 68.
[25] Id. ¶¶ 74–138.
[26] See ECF Nos. 14–16.

certificate of default on May 16, 2022.[27] Snyder moved to dismiss Plaintiffs' claims on June 1,

2022,[28] and Plaintiffs responded twenty-eight days later.[29] On June 30, 2022, Plaintiffs moved

for default judgment.[30] Snyder filed for Chapter 13 bankruptcy a week later.[31]

The court denied Snyder's motion to dismiss on August 11, 2022.[32] Six days later, the

court denied Plaintiffs' first motion for default, concluding that default judgment by the Clerk of

Court was inappropriate.[33] Plaintiffs filed a second motion for default on September 14, 2022.[34]

### ANALYSIS

Plaintiffs request that the court enter default judgment and award them attorney's fees

and costs.[35] To grant default judgment, the court must ensure that jurisdiction exists and that

default judgment is appropriate. For fees and costs, the court analyzes whether Plaintiffs' request

is proper and reasonable.

### I.    The Court Has Jurisdiction to Enter Default Judgment.

The court must first ensure that jurisdiction exists to enter default judgment. "[W]hen

entry of a default judgment is sought against a party who has failed to plead or otherwise defend,

the district court has an affirmative duty to look into its jurisdiction both over the subject matter

and the parties."[36] "In reviewing its personal jurisdiction, the court does not assert a personal

---

[27] ECF No. 21, filed May 16, 2022.
[28] ECF No. 23, filed June 1, 2022.
[29] ECF No. 25, filed June 29, 2022.
[30] Mot. Default, ECF No. 26, filed June 30, 2022.
[31] ECF No. 27, filed July 7, 2022.
[32] ECF No. 29.
[33] Order Deny Mot. Default 5, ECF No. 30, filed Aug. 17, 2022.
[34] Second Mot. Default.
[35] *Id.* at 1; *see* DUCivR 55-1(b)(1)(2).
[36] *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

[jurisdiction] defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."[37]

Plaintiffs bring federal and state law claims. The court has federal question jurisdiction over Plaintiffs' federal law claims under ERISA.[38] As to the state-law claims,[39] Plaintiffs assert that there is complete diversity between the parties and the amount in controversy is over $75,000.[40] Mr. C. Sova and Ms. Sova are residents of Arizona and Colorado respectively.[41] BCA is a corporation formerly registered in Nevada and Benefit Strategies is a Utah limited liability company.[42] Utah is the principal place of business for both entities.[43] And Plaintiffs request $282,931.11 in damages.[44] Because the parties are diverse and the asserted damages exceed the statutory threshold, this court has subject matter jurisdiction.

Personal jurisdiction is also satisfied. Because Utah is the principal place of business for BCA and Benefits Strategies, Defendants are subject to general jurisdiction.[45] ERISA allows for nationwide service of process, and all Defendants are U.S. residents and subject to service in the United States.[46] Finally, Plaintiffs submitted proof of service on May 10, 2022,[47] and the process

---

[37] *Id.*
[38] *See* Compl. ¶¶ 74–102; 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1).
[39] *See* Compl. ¶¶ 103–38.
[40] *Id.* ¶¶ 1–6; *see* 28 U.S.C. § 1332.
[41] Compl. ¶¶ 1–2.
[42] *Id.* ¶¶ 3–5.
[43] *Id.*
[44] *Id.* ¶¶ 10–11.
[45] *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014))).
[46] Compl. ¶ 15; *see* 29 U.S.C. § 1132(e)(2).
[47] *See* ECF Nos. 14–16.

servers certified delivery of the summons and complaint on Defendants' agent.[48] For these

reasons, the court has jurisdiction over the subject matter and the parties.

## II.    Default Judgment Is Appropriate.

When a plaintiff's claim is not for a sum certain, "the party must apply to the court for a

default judgment."[49] The court "may conduct further proceedings to enter or effectuate the

judgment as it deems necessary."[50] The court previously denied Plaintiffs' request for entry of

default by the Clerk of Court because there was doubt as to the precise amount owed by

Defendants.[51] As a result, the court must determine whether a hearing is necessary before

entering a judgment.

In the Tenth Circuit, "a court may not enter a default judgment without a hearing unless

the amount claimed is a liquidated sum or one capable of mathematical calculation."[52] Yet an

evidentiary hearing may not be necessary when affidavits and other documentary evidence

before it will create a record sufficient to make the necessary findings.[53] Here, the affidavits and

documentary evidence before the court are sufficient to establish such a record.[54]

"Default judgment is a harsh sanction."[55] It is "normally 'available only when the

adversary process has been halted because of an essentially unresponsive party' and 'the diligent

---

[48] *See* ECF Nos. 14–16; Second Aff. Melissa Baris ¶ 31, ECF No. 31-2, filed Sept. 14, 2022.
[49] Fed. R. Civ. P. 55(b)(1).
[50] *Id.* R. 55(b)(2).
[51] *See* Order Deny Mot. Default 4–5.
[52] *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983).
[53] *See Malluk v. Berkeley Highlands Prods., LLC*, No. 19-cv-01489, 2020 WL 1033339, at *2 (D. Colo. Mar. 3, 2020); *U.S. Small Bus. Admin. v. Branson Props., LC*, No. 2:15-cv-00656, 2016 WL 6902123, at *3 (D. Utah Nov. 23, 2016) ("[T]he court may not enter a default judgement without sufficient evidence in the record to establish the legal and factual basis to support the award." (citing *Venable*, 721 F.2d at 300)).
[54] *See* Aff. Melissa Baris, ECF No. 26-2, filed June 30, 2022; Second Aff. Melissa Baris; Compl. and accompanying exhibits; Second Mot. for Default and accompanying exhibits.
[55] *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987).

party must be protected lest he be faced with interminable delay and continued uncertainty as to

his rights.'"[56] Despite service and notice almost five months ago, Defendants have failed to

appear and defend against Plaintiffs' claims.[57] Plaintiffs are entitled to entry of judgment if the

Complaint establishes the basis for the claims and damages.[58]

ERISA permits a civil action by a plan participant or beneficiary to "recover benefits due

to him under the terms of his plan."[59] The Complaint asserts that Plaintiffs were participants or

beneficiaries in a plan governed by ERISA and that they were entitled to distributions after

Defendants terminated the Plan.[60] Defendants have not provided Plaintiffs any distributions since

August 2021.[61] Defendants had fiduciary duties to Plaintiffs, and they breached those duties and

harmed Plaintiffs by purporting to amend the Trust, failing to fund the Plan, making imprudent

investments, and failing to pay benefits.[62] Thus, the asserted facts show a proper basis for

Plaintiffs' claims.

Next, the Complaint provides a sufficient basis for damages. As of December 31, 2019,

the Plan showed a balance of $518,623.91 for Mr. C. Sova and $77,046.80 for Ms. Sova.[63] From

January 2020 until August 2021, Plaintiffs received monthly distributions of $14,231.83 and

$2,155.15 respectively.[64] The Plan's interest rates after January 2020, however, are not defined

numerically. Plaintiffs chose a "Income—Fixed interest paying current rate."[65] The Plan defines

---

[56] *Petersen v. Carbon County*, 156 F.3d 1244 (10th Cir. 1998) (quoting *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991)).
[57] *See generally* Docket, *Sova v. Snyder*, No. 2:22-cv-00247 (D. Utah).
[58] *See* Fed. R. Civ. P. 55(b)(2).
[59] 29 U.S.C. § 1132(a)(1)(B).
[60] Compl. ¶¶ 74–82.
[61] *Id.* ¶¶ 80–82.
[62] *Id.* ¶¶ 84–102.
[63] Statement of Benefits, ECF No. 31-3, filed Sept. 14, 2022.
[64] Aff. Melissa Baris ¶¶ 8, 12.
[65] Investment Fund Election, ECF No. 2-6, filed Apr. 7, 2022.

this rate as "[b]ased on performance of fixed interest investments within a bond portfolio

managed by a legal reserve life insurance company, through a cash value life insurance policy or

annuity [and] . . . [f]luctuates based on Treasury Bond and money market fund rates."[66] While

Defendants have not said what the Plan used as a rate after January 2020, Defendants applied a

5% interest rate for the Plan years ending December 31, 2019[67] and December 31, 2018.[68] Yet

the Federal Reserve reports that the Ten-Year Treasury bond rates fluctuated from 1.88% to

2.98% between January 1, 2020 and June 30, 2022.[69] Using the principal as of December 31,

2019 and monthly distributions, Plaintiffs offer three different sums depending on the interest

rate. Under a 5% interest rate, Defendants owe Plaintiffs $276,058.20 and $40,117.68

respectively.[70] Applying the treasury interest rates, the values are $244,362.67 and $35,460.07.[71]

The average between the two sets of values is $260,210.44 and $37,788.88.[72]

Plaintiffs agree with the court's finding that it is unknown whether Defendants would

have applied the 5% interest rate in 2020 and 2021.[73] But they contend that the court should

apply the higher interest rate because Defendants have breached their obligation to inform

Plaintiffs of the applied interest rate.[74] Yet entry of default is a harsh sanction, and the court is

unwilling to assume a 5% interest rate would have been applied. But the court also finds that the

lower interest rate—based on the Ten-Year Treasury Bond rates—does not necessarily account

---

[66] Summary Plan Description 7, ECF No. 2-8, filed Apr. 7, 2022.
[67] 2019 Annual Review 7, ECF No. 31-3, filed Sept. 14, 2022.
[68] 2018 Annual Review 7, ECF No. 31-4, filed Sept. 14, 2022.
[69] *See Market Yield on U.S. Treasury Securities at 10-Year Constant Maturity*, Fed. Reserve Econ. Research, https://fred.stlouisfed.org/series/DGS10#0 (last visited Sept. 30, 2022).
[70] Second Aff. Melissa Baris ¶¶ 12, 18.
[71] *Id.* ¶¶ 13, 19.
[72] Second Mot. Default ¶ 27.d.
[73] *See* Second Aff. Melissa Baris ¶ 24.
[74] *Id.*

for the Plan's reliance on various "fixed interest investments" in a bond portfolio grounded in both Treasury Bond rates and "money market fund rates."[75] For these reasons, the court finds that the average interest rate is reasonable. Default judgment in the amount of $260,210.44 for Mr. C. Sova and $37,778.88 for Ms. Sova is proper.

### III.   Plaintiffs Are Awarded Reasonable Attorney's Fees and Costs.

Plaintiffs request attorney's fees and costs.[76] Pursuant to ERISA, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[77] The court must therefore consider whether it should grant fees and costs, and if so, determine a reasonable amount.

The Tenth Circuit has established five factors for the court to consider before awarding attorney's fees and costs: (1) the degree of culpability or bad faith on the part of the opposing party; (2) "the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan . . . ; and (5) the relative merits of the parties' positions."[78] "No single factor is dispositive and a court need not consider every factor in every case."[79]

Defendants have breached their fiduciary duties to properly manage the Plan, safeguard Plan assets, and disperse funds to Plaintiffs. Based on their actions, the Plan was shut down

---

[75] Summary Plan Description 7.

[76] Compl. 30. The court notes that it generally "may not award attorney's fees without holding a hearing to determine the amount." *Venable*, 721 F.2d at 300. However, the court finds that the detailed declaration of counsel and time report submitted by Plaintiffs provide substantial documentary evidence from which a well-supported determination of fees may be made. *See* Aff. Melissa Baris ¶¶ 21–26; Invoice Summary, ECF No. 31-5, filed Sept. 14, 2022.

[77] 29 U.S.C. § 1132(g)(1).

[78] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013).

[79] *Id.*

without sufficient assets to pay all Plan beneficiaries.[80] Defendants have also failed to provide an accounting or a detailed explanation for the Plan's termination.[81] Thus, other Plan participants and beneficiaries likely have been harmed by Defendants' conduct. An award of attorney's fees and costs would likely help deter other plan administrators from similar bad faith and deficient conduct.[82] For these reasons, Plaintiffs are awarded reasonable attorney's fees and costs.

Plaintiffs request $67,941.50 in attorney's fees and $1,203.36 in costs.[83] "In the Tenth Circuit, the reasonableness of an attorneys' fees request is analyzed according to the lodestar method, which involves calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which yields 'a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances.'"[84]

Before reaching the overall reasonableness of the attorney's fees, the court addresses fees for Mr. Snyder's motion to dismiss. Plaintiffs argue that work for their response to the motion to dismiss should be part of the judgment because the fees were incurred in the course of the lawsuit "which Plaintiffs would not have had to bring but for the wrongful behavior of all Defendants."[85] Yet the instant motion does not include Mr. Snyder. The court has stayed proceedings against him pursuant to the bankruptcy action. For that reason, the court will not consider attorney's fees for counsels' time spent opposing Mr. Snyder's motion to dismiss.

---

[80] Compl. ¶ 68.

[81] *Id.* ¶ 70–72.

[82] The court has no information about Defendants' ability to satisfy an award of fees because they have not appeared.

[83] Second Mot. Default 11.

[84] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-cv-00032, 2022 WL 2474013, at *3 (D. Utah July 6, 2022) (internal quotation marks omitted) (quoting *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010)); s*ee Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

[85] Second Mot. Default ¶ 33.d.

Plaintiffs provide detailed time records showing hours worked. Not including matters related to Mr. Snyder, Plaintiffs assert that attorneys collectively logged 119.7 hours.[86] The rates ranged from $355/hour to $585/hour, depending on the counsel's skill level and experience, with the $355/hour rate applied to the majority of the hours.[87] Plaintiffs request costs in the amount of $1,203.36, which include "filing fees, services of summons and other papers, and pro hac vice fees."[88] Having reviewed the briefings, Melissa Baris's second affidavit, and the invoices, the court finds that $52,285.00 is a reasonable amount in attorney's fees, as is $1,203.36 in costs.

## ORDER

Accordingly, Plaintiffs' Second Motion for Default Judgment[89] is GRANTED. The court awards Mr. C. Sova $260,210.44 in damages and Ms. Sova $37,778.88 in damages. The court awards Plaintiffs $52,285.00 in attorney's fees and $1,203.36 in costs. Post-judgment interest will accrue at the legal rate.

Signed October 4, 2022.

BY THE COURT

_____

David Barlow
United States District Judge

---

[86] *See* Second Aff. Melissa Baris ¶ 24; Invoice Summary.
[87] Second Aff. Melissa Baris ¶¶ 21–22, 24; Invoice Summary.
[88] Second Aff. Melissa Baris ¶ 26; Invoice Summary.
[89] ECF No. 31.